IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PEPPER G.,[1] | ) | Civil Action No. 2:25-cv-03909-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Pepper G. ("Plaintiff"), brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This matter was referred to the Magistrate Judge for a Report and Recommendation ("R&R") pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons set forth herein, the undersigned recommends reversing the decision of the Commissioner and remanding for further consideration.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on November 3, 2020, alleging a disability onset date of August 27, 2020. (R. at 25.) Plaintiff claimed disability due to, *inter alia*, carotid artery disease, thyroid disease, degenerative disc disease, sciatic nerve issues, anxiety, and high cholesterol. (R. at 240.) Plaintiff has a limited education and no past relevant work. (R. at 36.) Her application was

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

denied initially and on reconsideration. (R. at 25.) After a hearing before an Administrative Law

Judge ("ALJ") on November 3, 2023, the ALJ issued a decision on February 29, 2024, in which

the ALJ found that Plaintiff was not disabled. (R. at 25–37.) The Appeals Council denied Plaintiff's

request for review, (R. at 1–5), making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner

has adopted the following findings of the ALJ:

(1)     The claimant has not engaged in substantial gainful activity since November 3, 2020, the application date (20 CFR 416.971 *et seq.*).

(2)     The claimant has the following severe impairments: lumbar radiculopathy, coronary artery disease status post coronary artery bypass graft, and obesity disorder (20 CFR 416.920(c)).

(3)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can occasionally climb ramps and stairs; never climb ladder, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch, but never crawl. The claimant can frequently work at unprotected heights and around moving mechanical parts, and can occasionally work in an environment with dust, odors, fumes, and pulmonary irritants, and occasionally be in an environment with extreme cold, and in extreme heat.

(5)     The claimant has no past relevant work (20 CFR 416.965).

(6)     The claimant was born on June 11, 1977 and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant subsequently changed age category to younger individual age 45-49 (20 CFR 416.963).

(7)     The claimant has a limited education (20 CFR 416.968).

(8)     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

2

(9)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

(10)    The claimant has not been under a disability, as defined in the Social Security Act, since November 3, 2020, the date the application was filed (20 CFR 416.920(g)).

(R. at 25–37.)

## APPLICABLE LAW

The Act provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq.* "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is not eligible for SSI until the date on which he files an application for benefits. 20 C.F.R. § 416.202; *see also* 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any time period that precedes the first month following the date on which an application was filed); *see also Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir. 1997) (noting that SSI benefits are not payable for any period prior to the filing of an application). Further, an application for benefits remains in effect until the date of the ALJ's decision. 20 C.F.R. § 416.330; *see also Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (holding that a reviewing court is limited to determining "whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision").

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.

3

An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to his past relevant work, the burden shifts to the Commissioner to show that the claimant—considering his age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340

(4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## **DISCUSSION**

Plaintiff argues that the ALJ erred by discounting Plaintiff's subjective complaints based on her failure to pursue additional medical treatment without investigating the reasons for that failure. (Dkt. No. 11 at 10–12.) Plaintiff further argues that the ALJ's evaluation of her subjective complaints is not otherwise supported by substantial evidence. (*Id*. at 12–14.) The Commissioner

5

responds that substantial evidence supports the ALJ's finding that Plaintiff's limitations do not preclude all work activity. (Dkt. No. 12.)

Below, the undersigned considers the applicable standards before analyzing the parties' arguments.

### A.    Standards

A claimant's RFC, which represents "the most [she] can still do despite [her] limitations," is determined by assessing all relevant evidence in the case record, including "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(1), (a)(3); *see also Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of her own limitations. 20 C.F.R. § 404.1545(a)(3).

SSR 16-3p provides a two-step process for evaluating an individual's symptoms.[2] First, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). In the second step the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . ." *Id.* at *4.

---

[2] In March 2016 the Social Security Administration published SSR 16-3p, 2016 WL 1119029 (2016), which rescinds and supersedes SSR 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. SSR 16-3p applies to determinations and decisions made on or after March 29, 2016. Thus, this regulation applies to the instant ALJ decision, which was decided on February 29, 2024. SSR 16-3p, 2017 WL 5180304, at *13 n.27 (S.S.A. Oct. 25, 2017) ("Our adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016."). Although SSR 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors considered under SSR 96-7p.

20 C.F.R. § 404.1529(c)(4) provides that when evaluating a claimant's subjective statements about his or her symptoms, the ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you." The ALJ is required to explain which of the claimant's symptoms he found "consistent or inconsistent with the evidence in [the] record and how [his] evaluation of the individual's symptoms led to [his] conclusions." SSR 16-3p, 2016 WL 1119029, at *8.

The ALJ is not to evaluate a claimant's symptoms "based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled." *Lewis*, 858 F.3d at 866; *see also Arakas*, 983 F.3d at 98 ("We also reiterate the longstanding law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms."); *see also Hines v. Barnhart,* 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations about his pain may not be discredited solely because they are not substantiated by objective evidence of pain and suggesting that such complaints should not be rejected unless evidence in the record is inconsistent with the underlying impairment or level of pain alleged) (quoting *Craig*, 76 F.3d at 595).

"'[A] necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). In other words, the ALJ must "'build an accurate and logical bridge from the evidence to his conclusion.'" *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

**B.     Analysis**

As noted above, Plaintiff argues that the ALJ erred by discounting Plaintiff's subjective complaints based on her failure to pursue additional medical treatment without investigating the reasons for that failure. (Dkt. No. 11 at 10–12.) Plaintiff further argues that the ALJ's evaluation of her subjective complaints is not otherwise supported by substantial evidence. (*Id*. at 12–14.) In response, the Commissioner asserts that "the ALJ did not rely solely on Plaintiff's limited treatment but instead articulated several valid reasons for finding Plaintiff's subjective allegations were not fully consistent with the objective medical and other evidence in the record." (Dkt. No. 12 at 6.)

Upon careful review, the undersigned cannot find that the ALJ appropriately assessed Plaintiff's subjective statements such that his decision is supported by substantial evidence. As an initial matter, in discounting Plaintiff's subjective statements about her limitations, the ALJ emphasized her limited treatment record, stating

> The claimant has not sought medical treatment with the frequency that could reasonably be expected from an individual who is suffering from pain and other symptoms of the intense and disabling nature, which the claimant alleges. The claimant's access to medical care has been considered pursuant to SSR 18-3p. While the evidence suggests that the claimant's financial situation is not optimal and it is unfortunate she has not been able to afford healthcare, there is no evidence indicating that the claimant exhausted all resources available to individuals who cannot afford medical treatment or medication such as hospitals, clinics, or community agencies.

(R. at 34.)

And the ALJ repeatedly referenced Plaintiff's limited treatment and lack of follow-up treatment throughout his discussion of the medical record and opinion evidence. For example, after considering records related to Plaintiff's heart attack on August 26, 2020 and her treatment thereafter in 2020 and 2021, the ALJ noted, *inter alia*, that Plaintiff "was scheduled for a four-

month follow-up appointment with cardiology in November 2021, but no-showed." (R. at 30–31.) He further noted that when Plaintiff "sought to establish care with a primary care provider in May 2021," Plaintiff "stated that she had been out of thyroid medication, Lasix, and Tramadol for a while. . . . Her medications were restarted in May 2021." (R. at 31.) The ALJ again cited these records when stating Plaintiff "is not fully compliant with recommended treatment and follow-up." (R. at 33 ("The record also shows that the claimant is not fully compliant with recommended treatment and follow-up. In May 2021, the claimant reported that she had been out of thyroid medication, Lasix, and Tramadol for chest pain from surgery for a while.").) When discounting a September 28, 2023 statement from Plaintiff's primary care provider that opined that Plaintiff would be limited to part-time work, would require additional breaks during the workday, would be unable to lift any weight, would be unable to perform any climbing stairs, kneeling, squatting, bending, or stooping, the ALJ stated, *inter alia*, "the record contains no follow-up with cardiology or primary care since April 2022." (R. at 35.)

As noted by Plaintiff, she testified at the November 3, 2023 ALJ hearing that she did not obtain health insurance until September 1, 2023. (R. at 50.) Plaintiff indicated that this "would explain some of the spotty treatment records." (R. at 51.) Plaintiff's treatment records also reference her limited funds. (R. at 434; 563; 1917, 2011.) For example, treatment records following Plaintiff's coronary artery bypass surgery on September 1, 2020 state "Patient lacks funding so post acute services will be limited will need to ensure patient has access to medications on dc." (R. at 434.) And her "discharge plans" dated September 7, 2020 note that "Patient is self pay" and states that "medical stability and home health services" are "barriers." (R. at 1917.)

Based on the foregoing, it appears the ALJ discounted Plaintiff's subjective statements based on her limited treatment record without giving due consideration to her documented inability

9

to afford treatment. The ALJ assumed, without clarifying during the ALJ hearing or otherwise, that Plaintiff did not exhaust the "resources available to individuals who cannot afford medical treatment or medication." (R. at 34.) It is well settled that "[a] claimant may not be penalized for failing to seek treatment she cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Because "the record plainly indicates that Plaintiff's inability to afford treatment impacted his compliance with recommended treatment, and the ALJ used that noncompliance as a basis on which to determine Plaintiff was not disabled," remand is warranted. *RAMON F. v. Bisignano*, No. 2:24—cv-02970-MGL-MGB, 2025 WL 1771161, at *5 (D.S.C. June 4, 2025), *adopted sub nom. Figueroa v. Bisignano*, 2025 WL 1768039 (D.S.C. June 26, 2025); *see also Gordon* v. *Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of patent purposes of the SSA to deny benefits to someone because he is too poor to obtain medical treatment that may help him"); *Starnes v. Kijakazi*, No. 2:20-cv-03372-RMG-MGB, 2021 WL 4155648, at *7 (D.S.C. Aug. 18, 2021) ("The Commissioner has failed to cite any authority indicating that a claimant must show pursuit of free or low-cost medical resources in order to successfully argue an ALJ erred in failing to consider the claimant's inability to afford treatment. Indeed, the case law indicates there is no such burden on the claimant with respect to this type of argument."), *adopted by*, 2021 WL 4155216 (D.S.C. Sept. 13, 2021); *Thomas v. Colvin*, No. 6:15-cv-3251-MBS-KFM, 2016 WL 5109199, *10 (D.S.C. Aug. 24, 2016) ("Courts in this district have consistently found remand necessary where the ALJ considered the claimant's failure to seek treatment in the disability determination despite evidence in the record of the claimant's inability to afford treatment.") (collecting cases).

While the Commissioner appears to assert that any error here was harmless because Plaintiff's limited treatment was only one factor considered by the ALJ in discounting Plaintiff's

subjective statements (Dkt. No. 12 at 6), the undersigned disagrees. In discounting Plaintiff's subjective statements, the ALJ stated her "reported allegations are not fully supported by the longitudinal record of evidence, including objective findings on physical examination, reported symptoms, and follow-up treatment."[3] (R. at 33.) As discussed above, the ALJ erred in relying on Plaintiff's lack of follow-up treatment. While the ALJ did discuss certain treatment records wherein Plaintiff reported "no edema or palpitations as well as no musculoskeletal complaints" (R. at 31), such complaints were not absent from her records. (*See* R. at 1185.) And aside from these factors, the ALJ largely relied on Plaintiff's objective medical findings, which is discouraged under Fourth Circuit case law. For example, in *Lewis*, the Fourth Circuit found that requiring objective medical evidence to support a plaintiff's subjective evidence of pain "improperly increase[s] [claimant's] burden of proof." 858 F.3d at 866; *see also* SSR 16-3p, 2017 WL 5180304, at *5 ("We will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled."). Most critically however, the ALJ appeared to discount a treating provider's opinion in part because of Plaintiff's lack of follow-up treatment. (R. at 35.) Because this provider's opinion would warrant a more restrictive RFC than that assessed by the ALJ if deemed persuasive, the ALJ's error here cannot be found harmless.

---

[3] In his briefing, the Commissioner asserts that "the ALJ also considered Plaintiff's activities of daily living." (Dkt. No. 12 at 9.) However, the ALJ did not discuss Plaintiff's reported daily activities anywhere in his decision, other than to briefly assess whether her mental impairments meet a listing at step three. (R. at 28–29.) The Commissioner's reliance on Plaintiff's reported activities amounts to post-hoc rationalization, which the Court cannot consider. *See, e.g.*, *Brown v. Kijakazi*, No. 4:21-CV-04051-TER, 2022 WL 12350625, at *8 (D.S.C. Oct. 21, 2022) (rejecting the Commissioner's "post-hoc reasoning" offered in support of the ALJ's finding; "Defendant's post-hoc rationalization with respect to this issue cannot be considered by the Court.").

## **CONCLUSION**

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for a new hearing consistent with this Report & Recommendation.

IT IS SO RECOMMENDED.

July 9, 2026

Charleston, South Carolina

_____

MARY GORDON BAKER

UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).